**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------- :

KAITLYN RAMIREZ,             :       Civil Action No.: 20-cv-6258 (ER)

              Plaintiff.   :

                           :

v.                          :       **ORAL ARGUMENT REQUESTED**

                           :

TEMIN & COMPANY, INC.,    :
and DAVIA TEMIN,          :

                           :

            Defendants.  :

                           :

---------------------------------------------- :

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 8 AND 12(b)(6)

---

                                 **OGLETREE, DEAKINS, NASH,**
                                 **SMOAK & STEWART, P.C.**
                                 10 Madison Avenue, Suite 400
                                 Morristown, New Jersey 07960
                                 Tel: (973) 656-1600
                                 Fax: (973) 656-1611
                                 *Attorneys for Defendants*

On the Brief:
Michael Nacchio, Esq.

# TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................... 1

STATEMENT OF FACTS ................................................................................................... 2

LEGAL ARGUMENT .......................................................................................................... 4

    I.    THE COMPLAINT VIOLATES RULE 8 AND SHOULD BE DISMISSED ................... 4

    II.   THE COMPLAINT FAILS TO STATE A CLAIM ................................................... 5

        A.  The Complaint Does Not Establish Constructive Discharge ........................................ 6

        B.  No Inference of Discrimination .................................................................................. 9

        C.  Plaintiff's Retaliation Claims Fail ............................................................................. 11

        D.  The Hostile Work Environment Claims are Meritless ................................................. 14

        E.  Plaintiff's Failure to Accommodate Claims Fail ........................................................ 17

    III. NO CLAIM FOR IIED ........................................................................................ 19

    IV. PLAINTIFF'S WAGE AND HOUR CLAIMS FAIL ................................................ 20

    V.  PLAINTIFF FAILS TO STATE A CLAIM FOR BATTERY ..................................... 21

    VI. LEAVE TO AMEND SHOULD BE DENIED ......................................................... 21

CONCLUSION .................................................................................................................... 22

i

## TABLE OF AUTHORITIES

PAGE(S)

CASES

*Acosta v. City of N.Y.*,
    No. 11 Civ. 856 (KBF), 2012 WL 1506954 (S.D.N.Y. Apr. 26, 2012) ................................11

*Alfano v. Costello*,
    294 F.3d 365 (2d Cir. 2002).........................................................................................15

*Anderson v. Hertz Corp.*,
    507 F. Supp. 2d 320 (S.D.N.Y. 2007), *aff'd*, 303 F. App'x 946 (2d Cir. 2008).......................9

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)................................................................................................4, 5, 6

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)..................................................................................................4, 5

*Ben-Levy v. Bloomberg L.P.*,
    518 F. App'x 17 (2d Cir. May 1, 2013) ..........................................................................15

*Benzinger v. Lukoil Pan Americas, LLC*,
    447 F. Supp. 3d 99 (S.D.N.Y. 2020).............................................................................12

*Boncimino v. New York State Unified Court Sys.*,
    No. 17-CV-6760 (VSB), 2018 WL 2225004 (S.D.N.Y. May 15, 2018)................................13

*Burlington N. & Santa Fe Ry. Co. v. White*,
    548 U.S. 53 (2006).....................................................................................................11

*Campbell v. N.Y. City Transit Auth.*,
    93 F. Supp. 3d 148 (E.D.N.Y. 2015) ..............................................................................7

*Chin v. N.Y.C. Hous. Auth.*,
    106 A.D.3d 443 (1st Dep't 2013), *lv. denied*, 22 N.Y.3d 861 (2014) ...................................10

*Chung v. City Univ. of N.Y.*,
    12 Civ. 4045 (GBD)(RLE), 2014 WL 11462811 (S.D.N.Y. Aug. 27, 2014).........................13

*Clark v. Jewish Childcare Ass'n, Inc.*,
    96 F. Supp. 3d 237 (S.D.N.Y. 2015)..............................................................................10

*Costabile v. New York City Health & Hosps. Corp.*,
    951 F.3d 77 (2d Cir. 2020)...........................................................................................18

*Crawford v. Metropolitan Gov't of Nashville and Davidson County, Tenn.*,
    555 U.S. 271 (2009)................................................................................................12

*Cruz v. Coach Stores, Inc.*,
    202 F.3d 560 (2d Cir. 2000).................................................................................12

*Davis-Molinia v. Port Auth. of N.Y. & N.J.*,
    08 CV 7584, 2011 WL 4000997 (S.D.N.Y. Aug. 19, 2011), *aff'd*, 488 F.
    App'x 530 (2d Cir. 2012)......................................................................................15

*DeJesus v. HF Mgmt. Servs.*,
    726 F.3d 85 (2d Cir. 2013)....................................................................................20

*Doe v. Alsaud*,
    224 F. Supp. 3d 286 (S.D.N.Y. 2016)..................................................................21

*Dowrich-Weeks v. Cooper Square Realty, Inc.*,
    535 F. App'x 9 (2d Cir. 2013) ................................................................................7

*Drummond v. IPC Int'l, Inc.*,
    400 F. Supp. 2d 521 (E.D.N.Y. 2005) .................................................................10

*Dudley v. NY City Hous. Auth.*,
    No. 12-CV-2771, 2014 WL 5003799 (S.D.N.Y. Sep. 30, 2014)...........................19

*E.E.O.C. v. Bloomberg L.P.*,
    29 F. Supp. 3d 334 (S.D.N.Y. 2014).....................................................................7

*E.E.O.C. v. Port Auth. of New York & New Jersey*,
    768 F.3d 247 (2d Cir. 2014)...................................................................................4

*Felix v. New York City Transit Auth.*,
    154 F. Supp. 2d 640 (S.D.N.Y. 2001)..................................................................17

*Foman v. Davis*,
    371 U.S. 178 (1962)..............................................................................................21

*Fowler v. UPMC Shadyside*,
    578 F.3d 203 (3d Cir. 2009)...................................................................................5

*Glatt v. Fox Searchlight Pictures, Inc.*,
    811 F.3d 528 (2d Cir. 2016)..................................................................................20

*Gonzalez v. EVG, Inc.*,
    123 A.D.3d 486 (1st Dep't 2014) .........................................................................16

*Grady v. Affiliated Cent., Inc.*,
    130 F.3d 553 (2d Cir.1997)....................................................................................9

iii

*Graves v. Finch Pruyn & Co., Inc.*,
    457 F.3d 181 (2d Cir. 2006)...........................................................................................17

*Hallgren v. Bell Atlantic Corp.*,
    No. 99 Civ. 11937, 2000 WL 726496 (S.D.N.Y. May 30, 2000)..............................................19

*Harris v. Forklift Sys., Inc.*,
    510 U.S. 17 (1993)........................................................................................................14

*Hernandez v. Kaisman*,
    103 A.D.3d 106 (1st Dep't 2012) ...................................................................................16

*Jean-Pierre v. Citizen Watch Co. of Am., Inc.*,
    No. 18-CV-0507 (VEC), 2019 WL 5887479 (S.D.N.Y. Nov. 12, 2019), appeal
    dismissed, No. 19-4036, 2020 WL 1188326 (2d Cir. Jan. 7, 2020) ........................................16

*Keys v. Humana, Inc.*,
    684 F.3d 605 (6th Cir. 2012) ...........................................................................................5

*Krys v. Pigott*,
    749 F.3d 117 (2d Cir. 2014)...........................................................................................21

*La Grande v. DeCrescente Distrib. Co.*,
    370 F. App'x 206 (2d Cir. 2010) .....................................................................................7

*Lefkowitz v. Esposito*,
    99 Misc. 2d 590 (Sup. Ct. 1979) .....................................................................................21

*Loeffler v. Staten Island Univ. Hosp.*,
    582 F.3d 268 (2d Cir. 2009).............................................................................................15

*Lundy v. Catholic Health Sys. Of Long Island, Inc.*,
    711 F.3d 106 (2d Cir. 2013)...........................................................................................20

*Malcolm v. Honeoye Falls Lima Cent. Sch. Dist.*,
    483 F. App'x 660 (2d Cir. 2012) ..................................................................................6, 7

*Martin v. Citibank, N.A.*,
    762 F.2d 212 (2d Cir.1985)............................................................................................19

*Martinez v. Mount Sinai Hosp.*,
    No. 14 CIV. 2548 (PAC), 2015 WL 9450624 (S.D.N.Y. Dec. 22, 2015), *aff'd,*
    670 F. App'x 735 (2d Cir. 2016) ................................................................................17, 18

*McBride v. BIC Consumer Prods. Mfg. Co.*,
    583 F.3d 92 (2d Cir. 2009)............................................................................................17

*McRedmond v. Sutton Place Rest. & Bar, Inc.*,
  95 A.D.3d 671 (1st Dept. 2012)..............................................................................15

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*,
  715 F.3d 102 (2d Cir. 2013)..............................................................................10, 15

*Murdaugh v. City of New York*,
  No. 10-cv-7218 (HB), 2011 WL 798844 (S.D.N.Y. May 8, 2011),
  *reconsideration denied*, No. 10-cv-7218 (HB), 2011 WL 1991450 (S.D.N.Y.
  May 19, 2011).....................................................................................................8

*Murray v. Visiting Nurse Servs. of N.Y.*,
  528 F. Supp. 2d 257 (S.D.N.Y. 2007)..................................................................13

*Nakahata v. New York-Presbyterian Healthcare Sys.*,
  723 F.3d 192 (2d Cir. 2013)................................................................................20

*Nicastro v. NYC Dep't of Design & Constr.*,
  125 F. App'x. 357 (2d Cir. 2005) ........................................................................14

*Nichols v. Mahoney*,
  608 F. Supp. 2d 526 (S.D.N.Y. 2009)..................................................................20

*Noll v. IBM Corp.*,
  787 F.3d 89 (2d Cir. 2015)..................................................................................17

*Norville v. Staten Island Univ. Hosp.*,
  196 F.3d 89 (2d Cir. 1999)...................................................................................6

*Nugent v. St. Luke's/Roosevelt Hosp. Ctr.*,
  No. 05-cv-5109 (JCF), 2007 WL 1149979 (S.D.N.Y. April 18, 2007), *aff'd
  sub nom. Nugent v St. Luke's-Roosevelt Hosp. Ctr.*, 303 F. App'x 943 (2d.
  Cir. 2008) ...........................................................................................................8

*Parker v. Columbia Pictures Indus.*,
  204 F.3d 326 (2d Cir. 2000)................................................................................17

*Patane v. Clark*,
  508 F.3d 106 (2d Cir. 2007)...........................................................................14, 15

*Petrosino v. Bell Atl.*,
  385 F.3d 210 (2d Cir. 2004)..................................................................................7

*Reiseck v. Universal Comm'ns of Miami, Inc.*,
  591 F.3d 101 (2d Cir.2010).................................................................................19

*Rodal v. Anesthesia Group of Onondaga, P.C.*,
  369 F.3d 113 (2d Cir. 2004)................................................................................17

*Rodriguez–Reyes v. Molina–Rodriguez*,
    711 F.3d 49 (1st Cir. 2013)........................................................................5

*Ruiz v. County of Rockland*,
    609 F.3d 486 (2d Cir. 2010)......................................................................6

*Serrano v. I. Hardware Distribs.*,
    14-CV-2488, 2015 WL 4528170 (S.D.N.Y. July 27, 2015).....................20

*Spiegel v. Schulmann*,
    604 F.3d 72 (2d Cir. 2010)........................................................................6

*Swierkiewicz v. Sorema N.A.*,
    534 U.S. 506 (2002)...............................................................................4, 5

*Taylor v. Seamen's Soc. for Children*,
    No. 12 Civ. 3713 (PAE), 2013 WL 6633166 (S.D.N.Y. Dec. 17, 2013) ..............................11

*Tolbert v. Smith*,
    790 F.3d 427 (2d Cir. 2015)....................................................................14

*Tomassi v. Insignia Fin. Group, Inc.*,
    478 F.3d 111 (2d Cir. 2007)....................................................................10

*Univ. of Tex. SW Med. Ctr. v. Nassar*,
    133 S. Ct. 2517 (2013).............................................................................11

*Vega v. Hempstead Union Free Sch. Dist.*,
    801 F.3d 72 (2d Cir. 2015)........................................................................6

*Waters v. Gen. Bd. of Global Ministries*,
    769 F. Supp.2d 545 (S.D.N.Y. 2011).....................................................10

*Whidbee v. Garzarelli Food Specialties*,
    223 F.3d 62 (2d Cir. 2000) ......................................................................14

*Williams v. Metro-North Commuter R.R. Co.*,
    No. 11 Civ. 7835 (CM), 2012 WL 2367049 (S.D.N.Y. June 20, 2012)................................15

*Williams v. New York City Hous. Auth.*,
    61 A.D.3d 62 (1st Dep't 2009) ...............................................................11

## RULES

Rule 8 ..........................................................................................................5

Rule 8(a)(2) ................................................................................................4

**STATUTES**

42 U.S.C. § 1981 ............................................................................................................6, 14

**OTHER AUTHORITIES**

N.Y. Exec. Law § 296(7) ..................................................................................................12

N.Y.C. Admin. Code § 8-107(7)..................................................................................11, 12

NYSHRL A8421/S6577 (as amended by S6594/A8424)....................................................14

www1.nyc.gov › downloads › pdf › Hair-Guidance ......................................................16

## PRELIMINARY STATEMENT

This is a garden-variety employment case.  Plaintiff is a female former intern and junior Research Assistant of Temin & Company, a well-known crisis management firm founded by Davia Temin.   Plaintiff's complaint asserts claims of discriminatory and retaliatory constructive discharge, unpaid overtime and minimum wages, battery over an incident of spilled coffee, and intentional infliction of emotional distress ("IIED").  The Complaint is as procedurally improper as it is substantively meritless.  Plaintiff intentionally disregards Rule 8's requirement for a "short and plain statement" of the claims to distract from the fact that she has no legal claims.

Stripped of its scurrilous irrelevancies, the Complaint fails to state a cause of action under Rule 12(b)(6).  Plaintiff never suffered an adverse employment action.  She implausibly alleges that her research into high profile sexual assault cases became so intolerable in fall 2019 that she had to resign on October 4, 2019.  Yet she did this work for two years, gutting her claim that this work was intolerable.  Instead, she alleges facts leaving little doubt that she became resentful in September 2019 when Temin placed a more capable young woman on the same project to work alongside Plaintiff.  Plaintiff alleges that her immediate supervisor, Amy Cao, "micro-critiqu[ed]" her, and, when Cao told Plaintiff that she was "disappointed" in her and was giving the project to the other employee, Plaintiff resigned "later that day" because she was "shocked and betrayed."

The Complaint strains logic and defies common sense in obvious ways.  Along with Plaintiff's race, color, and national origin, Plaintiff alleges that Temin maintained animus based upon her gender and disability status. Temin, though, is a woman.  And, as Plaintiff saw fit to publicly allege, Temin herself experienced a sexual assault and she is disabled after surviving a "traumatic car accident."  The "same actor" doctrine and related case law holds that animus is unlikely when the one whose conduct is at issue is a member of the same protected class.  The

1

inference is weakened further when that same person – Temin here – hired the plaintiff.  Temin obviously could see that Plaintiff was Afro-Latina when she hired her.

Therefore, Plaintiff's claim of retaliatory discharge is baseless.  Putting aside lack of animus and the fact that Plaintiff resigned, Plaintiff also never complained to anyone of mistreatment – ever – in order to be able to be subject to retaliation.

The remaining claims are equally meritless.  Alleging "$100,000 in student debt," and additional "credit card debt," she unsurprisingly seeks unpaid wages but fails to state a claim under New York's Labor Law.

Finally, her battery and IIED claims are frivolous.  She speculates as to Temin's state of mind about an accidental spillage of coffee.  She also alleges what the cases have held is the "highly disfavored" tort of IIED, but she cannot point to any necessary outrageous conduct.

This Court noted that "it appears we are going to move right to 12(b)(6) in any event" when Plaintiff refused to amend to comply with Rule 8 at the pre-motion conference.  This motion follows.

## STATEMENT OF FACTS[1]

Plaintiff is a New Jersey resident and Defendants are New York residents.  (Complaint "Compl." ¶¶ 1-2).  On January 9, 2017, Defendant Davia Temin ("Temin") offered Plaintiff an externship though January 13, 2017. (*Id.*).  Temin was "kind and professional." (*Id.* ¶ 40).

Upon college graduation, Temin offered Plaintiff a "ten-week" internship with a cash stipend.  (Compl. ¶ 45; *Id.*, Ex. 1).  On November 14, 2017, Temin hired Plaintiff as a "Research Assistant" with an annual salary of $30,000.  (*Id.* ¶ 64).   No employment contract governed Plaintiff's term of at-will employment.  (*Id.* ¶ 65).

---

[1] Defendants derive the Statement of Facts exclusively from the Complaint's allegations, and take them to be true for purposes of this motion only.

Defendants did not pay for work over "40 hours a week...not even straight-time, much less time-and-a half." (*Id.* ¶ 87) Plaintiff's cousin "earned more" at a movie theater. (*Id.* ¶ 89). Plaintiff "typically" worked more than fifty to sixty hours per week. (*Id.* ¶ 79).

Plaintiff, who self-identifies as "Afro-Latina," was the "only Black employee" at the company. (Compl. ¶¶ 11, 108). Temin is a "white woman" (*Id.* ¶ 27). Defendants "excluded" Plaintiff from events and required her to "answer phones." (*Id.* ¶ 112-22). Temin criticized her "phone voice" (*Id.* ¶ 186) and told her that "bold lipstick" and "hoop earrings" were unprofessional. (*Id.* ¶¶ 161-62). Temin once gifted Plaintiff "hair products" that she received from a conference, (*Id.* ¶ 155), said separately that, "[Plaintiff's] curly hair is fine," (*Id.* ¶ 178), and once joked to Plaintiff that Plaintiff might have "wanted to wring [Temin's] neck with [her] beautiful hair." (*Id.* ¶ 254).

Temin also required Plaintiff to perform work as set forth in the "Turnkey Document," including "menial tasks" like getting coffee and cleaning the office. (Compl. ¶¶ 132-39).

In July 2018, Temin moved Plaintiff's desk to the "front desk" to "keep an eye" on her. (*Id.* ¶ 128).

In September 2018, Temin hired a thirty-year old female "white-passing Latina" and paid her more than she paid Plaintiff - "$75,000 per year." (Compl. ¶ 145).

Temin, who has an injured leg from a "traumatic car accident" (Compl. ¶ 196), also "disregarded" plaintiff's "health condition[s]." (*Id.* ¶ 229).

During her two year employment, Plaintiff "spent most of her time" working on the "MeToo Index." (Compl. ¶ 244). However, "in fall 2019," this work "became very difficult" for her." (*Id.* ¶ 314). Plaintiff told Temin that the MeToo work triggered PTSD because of "prior life experiences." (*Id.* ¶ 318). Temin replied that she herself experienced sexual assault. (*Id.* ¶ 319).

"In September 2019," Defendants assigned another female employee to work on the MeToo project with Plaintiff. (Compl. ¶ 323).  Supervisor Amy Cao managed both Plaintiff and the other employee.  Cao "micro-critiqued" their work.  (*Id*. ¶¶ 341-48).  Cao also told Plaintiff that she was "disappointed" in Plaintiff's work. (*Id*. ¶ 345).  Cao ultimately gave Plaintiff's work to the new employee because Plaintiff took "too long."  (*Id*. ¶ 344-46).  Plaintiff "felt shocked and betrayed" (*Id*. ¶ 347).  "Later that day," she resigned via email to Temin. (*Id*. ¶ 349).

## LEGAL ARGUMENT

### I.    THE COMPLAINT VIOLATES RULE 8 AND SHOULD BE DISMISSED

Plaintiff's Complaint alleges garden-variety employment claims yet it spans 481 paragraphs over 77 pages, with exhibits totaling 150 pages.  Rule 8(a)(2) requires that complaints contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(a)(2). Plaintiff though chronicles items as irrelevant as Defendants' office fixtures and abusively details misappropriated proprietary information.  The prolix Complaint burdens Defendants and the Court.

The Complaint also impermissibly injects evidentiary matters into the pleading.   In *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002), the Court emphasized that employing the McDonnell Douglas framework at the pleading stage would interject evidentiary matters into the pleading and conflict with Rule 8(a)(2)'s calling for a "short and plain statement of the claim." *Id*. Even under the pleading regime set forth by the Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), pleading evidentiary matters like Plaintiff has done here violates Rule 8.

The Second Circuit and sister circuits recognize that *Swierkiewicz* has continued viability especially in the employment discrimination context post *Twombly* and *Iqbal*.  *See E.E.O.C. v. Port Auth. of New York & New Jersey*, 768 F.3d 247, 254 (2d Cir. 2014) ("*Twombly*'s endorsement of *Swierkiewicz* mandates, at a minimum, that *Swierkiewicz*'s rejection of a heightened pleading

4

standard in discrimination cases remains valid …   a Complaint must "at minimum assert non

conclusory factual matter sufficient to "'nudge[ ] [its] claims'... 'across the line from conceivable to

plausible'" to proceed…"); *see also Fowler v. UPMC Shadyside,* 578 F.3d 203, 211 (3d Cir. 2009);

*Keys v. Humana, Inc.*, 684 F.3d 605, 609 (6th Cir. 2012) (holding that *Swierkiewicz* remains good

law and "that it would be 'inaccurate to read [*Twombly* and *Iqbal*] so narrowly as to be the death of

notice pleading.'"); *Rodriguez–Reyes v. Molina–Rodriguez*, 711 F.3d 49, 54 & n. 3 (1st Cir. 2013).

Plaintiff's Complaint, however, reads like a summary judgment memorandum.  She plods

though alleged evidence by which she intends to try to navigate the McDonnell Douglas framework

beyond simply stating a prima facie case.  This violates Rule 8.  *Swierkiewicz*, 534 U.S. at 511.

This should not be a complex complaint.  The uncomplicated nature of this case should have

been reflected in how it was plead.  Undoubtedly, Plaintiff was mindful that a pleading in compliance

with Rule 8 would have easily exposed its fatal infirmities.

The Court invited amendment under Rule 8 at the September 30, 2020 pre-motion

conference.  (See Transcript of hearing held September 30, 2020 at 11:15 – 13:15, Dkt. No. 30).

Plaintiff declined.  The Court responded, "it appears we are going to move right to 12(b)(6) in any

event." (*Id*. at 13:16-18).  This Rule 12(b)(6) motion follows in the interests of judicial economy.

## II.   THE COMPLAINT FAILS TO STATE A CLAIM

To survive a motion to dismiss under Rule 12(b)(6), a pleading must contain sufficient

factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted); *Bell Atlantic Corp. v. Twombly*, 550

U.S. 544, 547 (2007).  A claim has facial plausibility when the pleading sets forth factual content

that allows the court to reasonably infer that the defendant is liable for the alleged misconduct.  *Id*.

Complaints require "more than an unadorned, the-defendant-unlawfully-harmed-me

accusation." *Iqbal*, 556 U.S. at 678. "A pleading that offers 'labels and conclusions' or a

'formulaic recitation of the elements of a cause of action will not do…'" *Id.* (quoting *Twombly*, 550 U.S. at 555) (internal citations omitted). The court's determination of whether a complaint states a "plausible claim for relief" is a "context-specific task" that requires application of "judicial experience and common sense." *Id.* at 679.

### A. The Complaint Does Not Establish Constructive Discharge

Plaintiff alleges discriminatory discharge claims based upon her sex, race, national origin, color, and disability status under 42 U.S.C. § 1981, the NYSHRL, and NYCHRL. These claims fail because Plaintiff voluntarily resigned her employment on October 4, 2019. (Compl. ¶ 357). She fails to allege facts plausibly rising to the high legal standard for constructive discharge.

Where a plaintiff fails to allege facts sufficient to establish any element of the prima facie case, the complaint fails to state a claim. To establish a prima facie case of discrimination under 42 U.S.C. § 1981, SHRL, and CHRL, a plaintiff must show that (1) she is a member of a protected class; (2) she was qualified for the position she held; (3) she suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to the inference of discrimination. *See Ruiz v. County of Rockland*, 609 F.3d 486, 491-92 (2d Cir. 2010); *see also Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015) (Title VII standards apply to § 1981); *Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89, 95 (2d Cir. 1999) (Title VII standards apply to SHRL claims); *Spiegel v. Schulmann*, 604 F.3d 72, 80 (2d Cir. 2010) (applying McDonnell Douglas analysis to CHRL claim).

Plaintiff cannot make out claims for discrimination because she has not shown that she suffered a materially adverse employment action. In the context of discrimination, "[a] plaintiff sustains an adverse employment action if she endures a 'materially adverse change' in the terms and conditions of employment." *Malcolm v. Honeoye Falls Lima Cent. Sch. Dist.*, 483 F. App'x 660, 662 (2d Cir. 2012) (citing *Galabya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000)).

An employment action is materially adverse if it is "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Id.* Thus, "[e]veryday workplace grievances, disappointments, and setbacks do not constitute adverse employment actions." *La Grande v. DeCrescente Distrib. Co.*, 370 F. App'x 206, 211 (2d Cir. 2010).

Plaintiff admits that she resigned her employment. (Compl. ¶¶ 349, 357). She alleges that, "no reasonable employee would feel it possible to continue working under such conditions." (*Id.* ¶ 348). She therefore attempts to proceed based on constructive discharge.

A constructive discharge claim requires facts: (1) that the employer acted deliberately or intentionally in bringing about the complained of work conditions and, (2) that the conditions were "intolerable." *Petrosino v. Bell Atl.*, 385 F.3d 210, 229 (2d Cir. 2004). "In order to meet the first requirement, the plaintiff must, at a minimum, show that the employer acted deliberately in bringing about the intolerable work conditions." *Campbell v. N.Y. City Transit Auth.*, 93 F. Supp. 3d 148, 170-171 (E.D.N.Y. 2015) (citing *Petrosino*, 385 F.3d at 229-30). "[T]he conditions must be assessed objectively by reference to a reasonable person in the employee's position." *Id.*[2]

Plaintiff alleges that she resigned in the "fall of 2019" because "working on the #MeToo Index became very difficult for [her]." (Compl. ¶ 314). However, she admits that she worked on this project "since she started working at Temin & Company" two years earlier. (*Id.*). Given this, she cannot establish constructive discharge. *See Dowrich-Weeks v. Cooper Square Realty, Inc.*, 535 F. App'x 9, 11-12 (2d Cir. 2013) (affirming 12(b)(6) dismissal of § 1981, SHRL, and CHRL constructive discharge discrimination claims and finding that negative remarks about plaintiff,

---

[2] Although NYCHRL claims should be "analyzed separately and independently" from federal and state discrimination laws, "New York state courts have articulated an NYCHRL constructive discharge standard that is identical to the Title VII standard." *E.E.O.C. v. Bloomberg L.P.*, 29 F. Supp. 3d 334, 338–39 (S.D.N.Y. 2014) (citing *Lambert v. Macy's E., Inc.*, 84 A.D.3d 744, 746 (2d Dep't 2011); *Short v. Deutsche Bank Sec., Inc.*, 79 A.D.3d 503, 504 (1st Dep't 2010)).

moving plaintiff from an office to a cubicle, and not permitting plaintiff to take advantage of an alternative work schedule, and a title demotion were not adverse employment actions); *Murdaugh v. City of New York*, No. 10-cv-7218 (HB), 2011 WL 798844, *6 (S.D.N.Y. May 8, 2011), *reconsideration denied*, No. 10-cv-7218 (HB), 2011 WL 1991450 (S.D.N.Y. May 19, 2011) (granting defendant's motion to dismiss constructive discharge claims despite actionable federal HWE claim because the "significant passage of time where the employee endured the conditions complained of is sufficient to undermine a claim that working conditions were intolerable."); *Id.* (citing cases).

Plaintiff's tepid allegations at best establish that she grew dissatisfied with work. She complains that in the final two weeks leading up to her October 4, 2019 resignation, she grew tired of Amy Cao's management.  Cao "sent extensive edits late at night and expected her edits to be incorporated by the next morning."  (Compl. ¶ 342).

Defendants also assigned another employee to work on the MeToo project.  (Compl. ¶ 323). "Ramirez and the new employee stayed late several nights working on the project."   (*Id.* ¶ 340). However, Plaintiff felt that Cao did not appreciate her work. (*Id.* ¶ 345).

Cao ultimately gave the project to the new employee. (Compl. ¶¶ 344-47).  Plaintiff "felt shocked and betrayed…" (*Id.* ¶ 347).  Resentful and tired that her "employer was micro-critiquing her work product," she resigned "later that day…." (*Id.* ¶ 348).

Plaintiff's claim that "no reasonable employee would feel it possible to continue working under [these] conditions" falls far short. (Compl. ¶ 348).  "The fact that an employee 'feels that the quality of her work has been criticized,' or that her working conditions were 'difficult or unpleasant,' is insufficient to support a constructive discharge claim." *Nugent v. St. Luke's/Roosevelt Hosp. Ctr.*,

No. 05-cv-5109 (JCF), 2007 WL 1149979, at *17 (S.D.N.Y. April 18, 2007), *aff'd sub nom. Nugent v St. Luke's-Roosevelt Hosp. Ctr.*, 303 F. App'x 943 (2d. Cir. 2008).

Plaintiff does not establish constructive discharge as a matter of law. Therefore, all discrimination claims fail.

### B.   No Inference of Discrimination

In addition to lack of an adverse employment action, Plaintiff's discrimination claims all also fail for lack of animus. First, Davia Temin hired Plaintiff knowing her sex, race, and color – all obviously apparent characteristics. (See Compl. ¶¶ 42, 47). The "same actor" inference applies and negates any potential inference of discrimination in Plaintiff's alleged constructive discharge. *See Grady v. Affiliated Cent., Inc.*, 130 F.3d 553, 560 (2d Cir.1997) (on the "same actor" doctrine).[3]

Furthermore, the two-year gap between when Temin hired Plaintiff and when Plaintiff resigned does not negate the doctrine's application. "Though only nine days passed between plaintiff's hiring and firing in *Grady*, the Second Circuit has also applied the 'same actor' rationale where three years passed between plaintiff's hiring and firing." *Anderson v. Hertz Corp.*, 507 F. Supp. 2d 320, 329–30 (S.D.N.Y. 2007) (citing *Schnabel v. Abramson*, 232 F.3d 83, 91 (2d Cir. 2000)).

Plaintiff appears to allege a smattering of comments by Temin about "hair, nails, body, and being vocal" and concludes these comments reflect "stereotypes of Afro-Latinas and Dominican women as being "too sexual" and "too sassy." (Compl. ¶¶ 143-192, 381).

---

[3] Under the "same actor" doctrine, certain circumstances surrounding termination decisions "strongly suggest that invidious discrimination was unlikely," including "when the person who made the decision to fire was the same person who made the decision to hire, it is difficult to impute to her an invidious motivation that would be inconsistent with the decision to hire….This is especially so when the firing has occurred only a short time after the hiring." *Anderson v. Hertz Corp.*, 507 F. Supp. 2d 320, 329–30 (S.D.N.Y. 2007), *aff'd*, 303 F. App'x 946 (2d Cir. 2008) (citing *Grady*, 130 F.3d 553.).

These allegations are the product a pleading strategy to throw everything against the wall and see what sticks.  Even if they were true, none of these allegations negate the same actor doctrine's applicability, much less evidence that deliberate and intolerable animus led to Plaintiff's resignation.  *See Tomassi v. Insignia Fin. Group, Inc.*, 478 F.3d 111, 115 (2d Cir. 2007) (a remark evidences discriminatory animus if that remark "evinces a discriminatory state of mind" and on the temporal proximity between the remark and the alleged discriminatory conduct); *Clark v. Jewish Childcare Ass'n, Inc.*, 96 F. Supp. 3d 237, 252 (S.D.N.Y. 2015) (discussing context as one of the four factors that courts consider in determining whether a remark is probative); *see also Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013) (the "NYCHRL is not a general civility code . . . . [t]he plaintiff still bears the burden of showing that the conduct is caused by a discriminatory motive."); *Chin v. N.Y.C. Hous. Auth.*, 106 A.D.3d 443, 445 (1st Dep't 2013) (where a plaintiff fails to plead facts suggesting that "she has been treated less well than other employees because of her protected status[,] or that discrimination was one of the motivating factors for the defendant's conduct," she fails to plead a cause of action for intentional discrimination under the CHRL), *lv. denied*, 22 N.Y.3d 861 (2014).

Lastly, Plaintiff's claims of disability discrimination are meritless.  She alleges "PTSD, ADHD, and gynecological symptoms consistent with endometriosis, a shellfish allergy, a leg injury, and migraines." (Compl. ¶¶ 392, 434).  Even assuming these conditions are disabilities under the SHRL and CHRL, no facts establish deliberate and intolerable disability animus led to Plaintiff's resignation.

The undisputed fact that Plaintiff and Temin are members of both of these two protected classes also vitiates any inference of animus. *See Waters v. Gen. Bd. of Global Ministries,* 769 F. Supp.2d 545, 554 (S.D.N.Y. 2011) ("[W]here the plaintiff and individual whose conduct is at issue

10

are members of the same protected class, the inference that the conduct constitutes . . . discrimination is weakened"); *Drummond v. IPC Int'l, Inc.*, 400 F. Supp. 2d 521, 532 (E.D.N.Y. 2005) ("[A] well-recognized inference against discrimination exists were the person who participated in the allegedly adverse decision is also a member of the same protected class.")

Plaintiff goes to lengths to publicly tarnish Temin. Her antithetical Complaint is despite that Temin is a woman who has experienced a sexual assault, (Compl. ¶¶ 27, 319), is disabled from a "traumatic car accident" (Comp. ¶¶ 196-97), and despite that Temin could obviously see Plaintiff's skin color when she hired her. Her baseless allegations find no support in the facts or the law.

### C.  Plaintiff's Retaliation Claims Fail

Plaintiff's retaliation claims under § 1981, the SHRL, and CHRL, are all governed by the *McDonnell Douglas* burden-shifting analytical framework. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 61-67 (2006); *Acosta v. City of N.Y.*, No. 11 Civ. 856 (KBF), 2012 WL 1506954, \*6 (S.D.N.Y. Apr. 26, 2012) (applying same analytical framework to claims of retaliation under the CHRL).[4]

To state a claim for retaliation, a plaintiff must establish (1) participation in a protected activity; (2) defendant's knowledge of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action. In the

---

[4] CHRL claims for retaliation are analyzed under a similar framework with the exception that plaintiff need not show a "material" adverse action, but must instead show the employer's conduct was "reasonably likely to deter a person from engaging in protected activity." N.Y.C. Admin. Code § 8-107(7); *Williams v. New York City Hous. Auth.*, 61 A.D.3d 62, 71 (1st Dep't 2009). In addition, a plaintiff must also prove retaliation using "but for" causation as to her § 1981 claims. *Univ. of Tex. SW Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013); *Taylor v. Seamen's Soc. for Children*, No. 12 Civ. 3713 (PAE), 2013 WL 6633166, \*20 (S.D.N.Y. Dec. 17, 2013) ("but for" cause in federal retaliation claim but not CHRL retaliation claim).

retaliation context, an adverse employment action is an act "that could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington*, 548 U.S. at 53.

Plaintiff fails to establish her retaliation claims because 1) she lacks any protected activity, 2) did not experience any adverse employment action, and 3) cannot establish causation for her October 4, 2019 resignation.

First, despite running 77 pages, Plaintiff cannot allege that she ever engaged in protected activity. The term "protected activity" refers to action taken to protest or oppose statutorily prohibited discrimination. *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000).

In the count paragraphs – paragraphs 399, 441, and 445 – Plaintiff alleges that her protected activity was:  a) stating that she needed to "put her health first" when confronted about going to a doctor's appointment, b) "speaking out" against Temin's racist comments about the "'right kind of diversity'" in regards to the "in the Heights" musical, and c) stating that her work on the MeToo Index was causing a rise in symptoms related to PTSD.  (Compl. ¶¶ 399, 441, 445). None of these activities constitute protected activity under federal, state, or local law.  None establish that plaintiff "opposed" discrimination by communicating a belief that Defendants actually "engaged in … a form of employment discrimination."[5] *Crawford v. Metropolitan Gov't of Nashville and Davidson County, Tenn.*, 555 U.S. 271, 277 (2009); N.Y. Exec. Law § 296(7) (SHRL protected activity); N.Y.C. Admin. Code § 8-107(7) (CHRL protected activity); *see also Benzinger v. Lukoil Pan Americas, LLC*, 447 F. Supp. 3d 99, 123-26 (S.D.N.Y. 2020) (finding no protected activity for NYCHRL and NYSHRL retaliations claims of a German-American who alleged preferential

---

[5] Plaintiff's counsel writes in the counts that Plaintiff was "*speaking* out against Temin's racist comments" to elevate her actual statement.  She did not "speak out."  *Compare Compl*. (¶¶ 339, 441) with (Compl. ¶ 175) ("Ramirez said, 'It's most likely due to gentrification in the area.'").  Plaintiff was responding to Temin's race neutral statement, "If you want to be inclusive, you've got to include everyone."  (*Id*. ¶ 174).

treatment of employees of Russian ancestry); *c.f. Boncimino v. New York State Unified Court Sys.*, No. 17-CV-6760 (VSB), 2018 WL 2225004, at *12 (S.D.N.Y. May 15, 2018) (finding protected activity under the CHRL where "Plaintiff alleges that on multiple occasions he complained to Human Resources and to [a supervisor] regarding his treatment by colleagues and managers following his injuries").

Second, Plaintiff, as stated, never suffered any adverse employment action.  She resigned her employment and fails to state a claim for constructive discharge.  *See supra* Section (II)(A).

Even still, none of her allegations of adverse action support retaliation claims.  She broadly claims that she was a) criticized for going to the doctor instead of personally taking a lamp for repair, b) that defendants forced her to vacuum and dust, c) that defendants "exacerbated migraines" by "forcing" her to keep lights on, d) that Defendants did not allow remote work for five days instead of requiring plaintiff to use sick leave, and e) forcing her to continue to work on the MeToo Index. (Compl. ¶ 400). None of these allegations are adverse employment actions.  *See Chung v. City Univ. of N.Y.*, 12 Civ. 4045 (GBD)(RLE), 2014 WL 11462811, *4 (S.D.N.Y. Aug. 27, 2014) (finding that selecting a student employee to perform tasks that were suitable for plaintiff to perform, tasking plaintiff with "lower level" assignments, questioning plaintiff, and excluding plaintiff from training and staff meetings were not adverse employment actions).

Third, assuming *arguendo* protected activity and an adverse action, there is no inference of retaliation.  The Complaint deliberately does not proceed chronologically, because chronology reveals no causation could exist.

For example, on January 11, 2018, Plaintiff underwent an exploratory laparoscopy.  (Compl. ¶ 199). "When she got home," she requested and was "allowed" five days sick leave. (*Id.* ¶ 201). Five days sick leave notably satisfied her surgeon's request for "at least a full week off."  (*Id.* ¶ 200).

Months later, between May 9, 2018 and July 10, 2018, she then felt excluded from client meetings and events.  (Compl. ¶¶ 112-18). *See Murray v. Visiting Nurse Servs. of N.Y.*, 528 F. Supp. 2d 257, 275 (S.D.N.Y. 2007) ("[D]istrict courts within the Second Circuit have consistently held that the passage of two to three months between the protected activity and the adverse employment action does not allow for an inference of causation.").

In "July 2018" Temin moved her desk.  (*Id*. ¶ 132) (*specific date absent in original*).  On July 10, 2018, she came to work wearing a "medical boot."  (*Id*. ¶ 226).  Temin required her to "vacuum" and "dust," although no dates are alleged here either.  (*Id*. ¶¶ 227-29).  *See Nicastro v. NYC Dep't of Design & Constr.*, 125 F. App'x. 357, 358 (2d Cir. 2005) (citation omitted) (where "gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise.").

Plaintiff's retaliation claims are simply a further attempt to disparage Defendants over Plaintiff's unremarkable workplace grievances.  Her retaliation claims fail.

## D.  The Hostile Work Environment Claims are Meritless

Plaintiff does not state a claim for hostile work environment ("HWE") under federal, state, or local law.[6]   To establish a HWE claim under § 1981 and the SHRL, "[t]he plaintiff must show that the workplace was so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of her employment were thereby altered."  *See Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007); *Whidbee v. Garzarelli Food Specialties*, 223 F.3d 62, 69 (2d Cir. 2000) (§ 1981 claims are the same as Title VII); *Tolbert v. Smith*, 790 F.3d 427, 438 (2d Cir. 2015) (standards the same under federal and SHRL).  "Conduct that is not severe or pervasive enough to

---

[6] The SHRL was amended in 2019 but none of its amendments apply.  As applicable here, the amendment eliminating the "severe or pervasive" standard applies to claims accruing after the October 11, 2019 effective date.  *See* A8421/S6577 (as amended by S6594/A8424).

create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond [the] purview [of federal anti-discrimination law]." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993).

Plaintiff does not state a HWE claim. Her allegations focus on the purportedly biased criticism and close scrutiny of her performance (by Cao as much as Temin) and do not support a finding of "intimidation, ridicule, and insult." *See e.g., Patane*, 508 F.3d at 113. Courts in this Circuit have also emphatically rejected claims where the allegations were far more severe or pervasive than here. *See, e.g. Alfano v. Costello*, 294 F.3d 365, 374, 379 (2d Cir. 2002) (stating that "incidents must be more than 'episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive,'" granting judgment for defendant where plaintiff listed 12 incidents in support of her hostile work environment claim, and listing a number of cases where more severe or pervasive conduct was found insufficient); *Davis-Molinia v. Port Auth. of N.Y. & N.J.*, 08 CV 7584 (GBD), 2011 WL 4000997, *11 (S.D.N.Y. Aug. 19, 2011) (granting defendant summary judgment despite one plaintiff making over **16** allegations, and noting that "[t]he gravamen of their claims is rooted in conduct that amounts to nothing more than workplace dynamics — that is, personal enmity or personality conflicts"), *aff'd*, 488 F. App'x 530 (2d Cir. 2012). None of the HWE allegations remotely state a claim under § 1981 and the SHRL.

Not even the CHRL's broader standard supports a HWE claim. Plaintiff complains of what is at best "petty slights and trivial inconveniences." *Mihalik*, 715 F.3d at 108-09 (2d Cir. 2013) (quoting *Williams*, 61 A.D.3d at 80).[7]

---

[7] While CHRL claims "must be given an independent liberal construction," *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 278 (2d Cir. 2009), plaintiff must nevertheless "show that actions that created the hostile work environment were taken against [her] because of a prohibited factor." *Williams v. Metro-North Commuter R.R. Co.*, No. 11 Civ. 7835 (CM), 2012 WL 2367049, *13 (S.D.N.Y. June 20, 2012) ("[t]he broader remediation available under the City law does not allow the Plaintiff to dispense with linking [her] claim of hostility to some attitude that the law forbids."); *see also Ben-Levy v. Bloomberg L.P.*, 518

Plaintiff claims that she was "encouraged" to wear a corset and "shapewear" but deceptively does not say who made these comments and thus cannot impute liability to the company for them. (Compl. ¶ 156-157); *McRedmond v. Sutton Place Rest. & Bar, Inc.*, 95 A.D.3d 671, 673 (1st Dept. 2012).   And, though she claims that Temin told her that "hoop earrings" and "bold lipstick" were unprofessional, these "truly insubstantial" comments fall short of a HWE claim under the CHRL. These comments, even if true, including Temin's talking generally about "red nail polish," lack connection to Plaintiff's protected characteristics and fail to "signal views about the role of women in the workplace." *Hernandez v. Kaisman*, 103 A.D.3d 106, 115 (1st Dep't 2012) (citation omitted); *c.f. Gonzalez v. EVG, Inc.*, 123 A.D.3d 486, 487–88 (1st Dep't 2014) (Affirming HWE dismissal under SHRL but reversing CHRL HWE dismissal where "Defendants' alleged constant use of language degrading women, telling of sexually explicit jokes, and overt viewing of pornography in the workplace can be characterized as having subjected plaintiff to "differential treatment").   Here, though, Plaintiff simply concludes that Defendants operated off of the "stereotypes" about Black and Hispanic women.  (Comp. ¶ 374).

Finally, Plaintiff appears to allege a HWE based on hair. *See* Compl. ¶ 155 (Temin gifted Plaintiff hair products she received at a conference); Compl. ¶ 178 (Temin told Ramirez, "But your curly hair is fine"); Compl. ¶ 254 ("I know sometimes you must want to wring my neck with that beautiful hair of yours.").   Neither of these statements or gifting products indicate animus.

The New York City Commission on Human Rights ("CCHR") issued guidance on hair discrimination on February 19, 2019.  *See* "NYC Commission on Human Rights Legal Enforcement Guidance on Race Discrimination on the Basis of Hair", last accessed October 15, 2020 at: www1.nyc.gov › downloads › pdf › Hair-Guidance.  The CCHR guidance provides an example of

---

F. App'x 17, 20 (2d Cir. May 1, 2013) (summary order) (CHRL "still requires a showing of some evidence from which discrimination can be inferred.").

practices that violate the CHRL.  One is "telling a black employee with locs that they cannot be in a customer-facing role unless they change their hairstyle." *Id.* at 8; *c.f.* f.n. 44 (citing *Eatman v. UPS*, 194 F. Supp. 2d 256, 259 (S.D.N.Y. 2002) (policy that drivers must cover their "dreadlocks" etc. "would violate the NYCHRL.") The allegations here in no way approach this level.  *See Jean-Pierre v. Citizen Watch Co. of Am., Inc.*, No. 18-CV-0507 (VEC), 2019 WL 5887479, at *2, *15 (S.D.N.Y. Nov. 12, 2019), appeal dismissed, No. 19-4036, 2020 WL 1188326 (2d Cir. Jan. 7, 2020) (granting summary judgment on § 1981, SHRL, and CHRL claims where Defendant told Plaintiff "Your hair is not naturally straight, right?," and Plaintiff found that comment to be "racially offensive".)

Therefore, for the foregoing reasons, all HWE claims should be dismissed.

### E.   Plaintiff's Failure to Accommodate Claims Fail

Plaintiff's failure to accommodate claims under the SHRL and CHRL fail to state a claim. Plaintiff never requested a reasonable accommodation and even if she did, Defendants provided it.

To prevail on her NYCHRL and NYSHRL claims, Plaintiff bears the initial burden of making a prima facie showing that (i) she suffered from a disability within the meaning of the statutes; (ii) Defendants knew that she suffered from the disability; (iii) she could have performed her job with reasonable accommodation; and (iv) Defendants failed to make such accommodation. *See McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 97 (2d Cir. 2009); *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 338 (2d Cir. 2000).

Implicit in the requirement that Defendants refuse to make an accommodation is that the plaintiff ask for one, unless the necessary accommodation is obvious.  *See Graves v. Finch Pruyn & Co., Inc.*, 457 F.3d 181, 184 (2d Cir. 2006); *Rodal v. Anesthesia Group of Onondaga, P.C.*, 369 F.3d 113, 121 (2d Cir. 2004) ("In general ... it is the responsibility of the individual with a disability to inform the employer that an accommodation is needed.").   After an employee requests an accommodation, "the employer must engage in [an] 'interactive process' of finding a suitable

accommodation." *Felix v. New York City Transit Auth.,* 154 F. Supp. 2d 640, 657 (S.D.N.Y. 2001). The employer must provide an "effective" accommodation; it is "not required to provide a perfect accommodation or the very accommodation most strongly preferred by the employee." *Noll v. IBM Corp.*, 787 F.3d 89, 95 (2d Cir. 2015): *Martinez v. Mount Sinai Hosp.*, No. 14 CIV. 2548 (PAC), 2015 WL 9450624, at *3-4 (S.D.N.Y. Dec. 22, 2015), *aff'd,* 670 F. App'x 735 (2d Cir. 2016) (granting summary judgment dismissing NYCHRL and NYSHRL failure to accommodate claims.)

Accordingly, in *Costabile v. New York City Health & Hosps. Corp.*, 951 F.3d 77, 82 (2d Cir. 2020), the Second Circuit affirmed a 12(b)(6) dismissal of a failure to accommodate claim under the Rehabilitation Act where the Plaintiff did not request an accommodation and a medical leave did not impute knowledge sufficient to place the Defendants on notice of such that they "reasonably should have known" of a disability. *Id.* at 82.

Likewise, in *Martinez*, a case alleging failure to accommodate under both the CHRL and the SHRL, the Court granted summary judgment, finding that, "at most, the record shows that Plaintiff informed her supervisors only that 'latenesses were caused by my eye condition.'" *Martinez*, 2015 WL 9450624, at *4. "Plaintiff testified that she had informed [management] during meetings to address her tardiness that she suffered from uveitis and that the condition often caused her to need to come to work late." *Id.* at *3.

Plaintiff alleges disabilities of "PTSD, ADHD, and gynecological symptoms consistent with endometriosis, a shellfish allergy, a leg injury, and migraines." (Compl. ¶¶ 392, 434). However, conspicuously absent are allegations plausibly showing that Plaintiff made any request for an accommodation (or sufficiently put Defendants on notice of any disability necessitating a need for an accomodation). "Plaintiff's failure to affirmatively request an accommodation is a sound basis

for dismissal of [her] claim." *Costabile*, 951 F.3d at 82-83; *Id.* ("Plaintiff at most alleged that his doctor informed Defendants that his condition required leave.").

Moreover, to the extent that Plaintiff ever requested an accommodation, Defendants provided it. Temin permitted Plaintiff to take sick leave. (Comp. ¶ 201). Temin also allowed Plaintiff to take the Company's car service because Plaintiff said she had "back pain." (*Id.* ¶ 205).

Finally, as to her claim of a "migraine," she does not allege an accommodation was necessary to allow her to perform the essential functions of her job. Even under the CHRL, "[i]mplicit in the [CHRL] is the requirement that the accommodation enable the employee to continue to enjoy or perform the terms, conditions or privileges of employment." *Dudley v. NY City Hous. Auth.*, No. 12-CV-2771, 2014 WL 5003799, *34 (S.D.N.Y. Sep. 30, 2014) (citing and quoting *Miloscia v. B.R. Guest Holdings LLC*, 33 Misc.3d 466, 478 (N.Y. Sup. Ct. 2011), *aff'd in part, modified in part*, 94 A.D.3d 563 (1st Dep't 2012)). Plaintiff continued to perform her job.

At base, the Complaint simply alleges in conclusory fashion that Defendants "...overtly refused to accommodate" Plaintiff's disabilities. (Compl. ¶ 395). The allegations fail to state a failure to accommodate claim under the SHRL and CHRL.

### III.   NO CLAIM FOR IIED

Intentional Infliction of Emotional Distress ("IIED") is "a highly disfavored tort under New York law," and such claims generally "do not survive dispositive motions." *Hallgren v. Bell Atlantic Corp.*, No. 99 Civ. 11937, 2000 WL 726496, at *3 (S.D.N.Y. May 30, 2000). The conduct alleged must be "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Martin v. Citibank, N.A.*, 762 F.2d 212, 220 (2d Cir.1985). Plaintiff's allegations are the same as those in support of her constructive discharge claims. (Compl. ¶¶ 476-77). For the reasons set forth above, no facts remotely approach the standard for a claim for IIED.

## IV.    PLAINTIFF'S WAGE AND HOUR CLAIMS FAIL

Plaintiff alleges that Defendants violated New York State Labor Law (NYLL) provisions governing overtime and minimum wage compensation. These Labor Law provisions apply standards from the FLSA.  *See Reiseck v. Universal Comm'ns of Miami, Inc.*, 591 F.3d 101, 105 (2d Cir.2010) (noting that NYLL mandates overtime pay in same manner as FLSA).  These claims fail too.

First, "[w]here a plaintiff alleges violations of the FLSA's minimum and overtime wage provisions, the complaint should, at least approximately, allege the hours worked, for which wages were not received."  *Nichols v. Mahoney*, 608 F. Supp. 2d 526, 547 (S.D.N.Y. 2009).

Plaintiff alleges that "[t]ypically, she worked between fifty and sixty hours per week." (Compl. ¶ 79).  Allegations of overtime "typically" or "often" fail.  *See Lundy v. Catholic Health Sys. Of Long Island, Inc.*, 711 F.3d 106, 115 (2d Cir. 2013); *Serrano v. I. Hardware Distribs.*, 14-CV-2488, 2015 WL 4528170, *3 (S.D.N.Y. July 27, 2015) ("[a]llegations that a plaintiff 'regularly worked' more than forty hours per week are insufficient . . . .").  A pleading that "theoretically put[s] [a plaintiff] over the 40-hour mark in one or another unspecified week (or weeks)" is insufficient. *Id.*; *see also Nakahata v. New York-Presbyterian Healthcare Sys.*, 723 F.3d 192, 201 (2d Cir. 2013) ("absent any allegation that Plaintiffs were scheduled to work forty hours in a given week, these allegations do not state a plausible claim for such relief."); *DeJesus v. HF Mgmt. Servs.*, 726 F.3d 85, 89 (2d Cir. 2013) (dismissing the complaint because plaintiff simply "repeat[ed] the language of the [FLSA]," without "estimat[ing] her hours in any or all weeks or provid[ing] any other factual context or content.")."  Plaintiff's allegations are boilerplate.

Furthermore, her claims based on her internship that ended November 11, 2017 fail, as the Complaint does not plausibly allege that she was then an employee. (Compl. ¶ 59); s*ee Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528, 538 (2d Cir. 2016) ("proper question is whether the intern or the employer is the primary beneficiary of the relationship"). Nonetheless, even assuming

arguendo she was an employee, she does not properly plead a minimum wage claim.  *See Lundy*, 711 F.3d at 115 (2d Cir. 2013). Therefore, the NYLL claims fail and should be dismissed.

## V.     PLAINTIFF FAILS TO STATE A CLAIM FOR BATTERY

On the last day of the statute of limitations, Plaintiff alleges battery based on an allegation that Temin "used her hand to make bodily contact with Ramirez's hand as Ramirez was carrying hot coffee."  (Compl. ¶ 469). Battery is an intentional tort. To state a plausible claim of battery, Plaintiff must allege that Temin intentionally made harmful or offensive bodily contact without plaintiff's consent. *See Doe v. Alsaud*, 224 F. Supp. 3d 286, 294 (S.D.N.Y. 2016). "[I]t is essential that the element of intent be both pleaded and proved, and the pleading will be dismissed if it is not properly alleged." *Lefkowitz v. Esposito*, 99 Misc. 2d 590, 591 (Sup. Ct. 1979) (citing *Shea v. Esmay*, 50 Misc.2d 509, 270 (1967)).

This incident occurred during Temin's phone call.  Plaintiff does not allege Temin said anything to her.  Instead, she speculates intent through Temin's "facial expression…lack of care after she hit Ramirez, and by continuing with her phone call as if nothing happened…" (Compl. ¶ 472, ¶ 297-98).  These allegations concerning Temin's state of mind are speculation.

Therefore, the claim for battery fails.

## VI.     LEAVE TO AMEND SHOULD BE DENIED

It is "within the discretion of the District Court to deny leave to amend when amendment would be futile."  *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Krys v. Pigott*, 749 F.3d 117, at *14 (2d Cir. 2014) (internal citation omitted) ("Leave to amend may be properly denied if the amendment would be futile, as when the proposed new pleading fails to state a claim on which relief can be granted.").

Plaintiff expressed to the Court at the pre-motion conference that she could not amend the complaint to comply with Rule 8.  Unlike most other employment actions, the present style and

length of the Complaint represents a calculated decision to disregard rules of pleading to obfuscate a lack of material facts.  Plaintiff has provided this Court with no reason to believe that she can now replead in good faith necessary to survive another motion to dismiss.  The Court should deny leave to replead.

## **CONCLUSION**

For all the foregoing reasons, Defendants respectfully request that the Court dismiss Plaintiff's Complaint with prejudice in its entirety for both its violation of Rule 8 and based on its failure to state a claim upon which relief can be granted, pursuant to FED. R. CIV. P. 12(b)(6), along with such other relief as this Court deems just and proper.

Dated:  October 21, 2020

Respectfully submitted,

**OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**
*Attorneys for Defendants*

By:      *s/ Michael Nacchio*
          Michael Nacchio

44637628.1

22