UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KAITLYN RAMIREZ,

                Plaintiff,

        - against -

TEMIN & COMPANY, INC. and DAVIA TEMIN,

                Defendants.

**OPINION AND ORDER**

20 Civ. 6258 (ER)

Ramos, D.J.:

    Kaitlyn Ramirez brought this action against Temin & Company, Inc. (the "Firm") and its owner Davia Temin, alleging discrimination, harassment, failure to pay proper wages, and constructive discharge from employment. Now before the Court is Defendants' motion to seal the so-called Turnkey Document (the "Document"), an office procedural manual, and all paragraphs relating to the Document in the complaint, and motion to strike the complaint and accompanying documents. For the reasons set forth below, Defendant's motion to seal is GRANTED in part and DENIED in part and Defendants' motion to strike is DENIED.

    **I.    BACKGROUND**

    Ramirez is an Afro-Latina woman who attended Swarthmore College and applied for the college's externship program during her final year. Compl., Doc. 1 ¶¶ 11, 18. Through the program's lottery-based matching system, Ramirez was matched with the Firm, a crisis management firm which focuses on "cybersecurity, sexual harassment, and securities-related crisis management." *Id.* at ¶¶ 25, 32. On January 13, 2017, upon completing the week-long externship program, Ramirez was invited by Temin to join the Firm after she graduated. *Id.* ¶ 42. After graduating, Ramirez returned to the Firm on October 4, 2019. *Id.* ¶ 357.

Her initial offer letter describes her job as a ten-week internship, providing her with a $5,000 stipend in return for working fifty to sixty hours per week and performing work for the use and benefit of Defendants. *Id.* ¶¶ 45–54. At the start of Ramirez' internship, she signed a Proprietary Information and Confidentiality Agreement ("NDA") with the Firm, to assure that company procedures and practices were not released. Turnkey Doc., Doc. 1–2 at 6. The NDA for Interns protects disclosure of "Confidential Information" relating to the Firm and third-parties. "Confidential Information" is defined as "any past, present, or future techniques, know-how . . . processes, trade secrets, research activities and plans, prices, sales and customer information, customer, prospect or mailing lists, business plans, marketing plans and strategies, and business and financial information relating to the business, products, practices and techniques of the Company, clients, consultants, or licensees . . . ." Mot. to Seal, Doc. 6 at 2.

On November 11, 2017, the ten-week internship ended, and Temin offered Ramirez a permanent position as a Research Assistant with a salary of $30,000 a year. Doc. 1 ¶ 64. However, upon learning of a new law purportedly mandating a minimum salary of $50,000 per year for any salaried employee,[1] Temin altered Ramirez's pay structure, such that Ramirez became an hourly employee, and Temin informed her that she could not be paid more than $30,000 per year. *Id.* ¶¶ 71–75. Ramirez was still required to work in excess of 40 hours per week. *Id.* ¶¶ 79, 87. According to Ramirez, Defendants failed to pay her for all of the hours she worked. *Id.* ¶ 87. Moreover, she alleges that Temin's finances and expenditures suggest she is able to pay Ramirez as a salaried employee. *Id.* ¶ 75.

Ramirez also alleges that she was subject to workplace harassment and discrimination, describing instances when she was required to work late and other times when Temin would take

---

[1] Ramirez notes that Temin was "possibly referencing (albeit inaccurately) the U.S. Department of Labor's revised overtime regulations, which set a wage floor for various overtime exemptions." Doc. 1 ¶ 71 n.6.

up her time by inappropriately telling Ramirez about her personal problems at home and would otherwise "cry" to Ramirez about her life. *Id.* ¶ 84. After these conversations, Temin would request that Ramirez perform difficult research tasks or berate her for unfinished work. *Id*. ¶¶ 84–86.

Ramirez also alleges that, beginning in May 2018, she was excluded from webchat communications with other Firm employees, the annual client award dinner, and other weekly Firm calls and events. *Id.* ¶¶ 102–05, 112–27. By July 2018, Temin moved Ramirez to a desk at the front of the office, where she began to feel "watched." *Id.* ¶¶ 128–129. Ramirez alleges that the Firm then required her to perform menial tasks such as cleaning up around the office and perform personal tasks for Temin. *Id.* ¶¶ 132–41. Ramirez alleges that she was asked to perform these tasks because Temin operated on the racial stereotype that Black women were "housekeepers." *Id.* ¶ 142. Ramirez notes that she was the only Black employee during her tenure at the Firm. *Id.* ¶ 108.

Further, Ramirez recounts instances where Temin made sexually harassing and racially discriminatory comments about her appearance, as well as offensive comments about other people of color. *Id.* ¶¶ 148—95. For example, Ramirez alleges that Temin: (1) insinuated that Ramirez and other women who wear red fingernail polish are unintelligent and achieve results in business through flirtation, (2) offered her hair products that were marketed as being for people with tightly-curled hair, as is typical in people of Black ancestry, and (3) suggested she invest in shapeware and wear a corset at work. *Id.* ¶¶ 149, 155, 156, 157. Additionally, Ramirez alleges multiple instances in which she and others at the Firm were injured, ill, or unable to work due to physical ailments, yet Temin required them to continue to work. *Id.* ¶¶ 196–243. Ultimately, Ramirez left

the Firm in the fall of 2019, purportedly due to the effects of harassment and discrimination on her mental and physical health. *Id.* ¶ 314.

The Document is a 148-page guide of the "procedures to ensure that we keep on top of the thousands of details that are a part of our business, and that we respond – to our clients, potential clients, the media, our colleagues, and all other constituencies – in the most professional, thoughtful and exceptional manner possible." Doc. 1–2 at 6. It contains extensive, detailed information regarding Firm procedures, as well as procedures for handling Temin's personal tasks, such as instructions on management and scheduling of her personal and medical appointments and payment of her personal bills. Doc. 1 ¶ 70. Ramirez references the Document to support her allegations throughout the Complaint. *Id.* ¶¶ 70, 75, 124, 134, 135, 137, 182, 195 n.10, 232, 270, 271, 275, 276, 282, 284. As filed, Ramirez redacted the following sections from the Document: (1) employee contact information, (2) email account log-in information, (3) some of Temin's medical information, (4) vendor names, (5) telephone lines and numbers, (6) examples of "important clients," (7) usernames and passwords, (8) account numbers, (9) client names, (10) some of Temin's personal information and scheduling preferences, and (11) file locations. *Id.*

In her 77-page, 363-paragraph Complaint, Ramirez alleges violations of improper pay, workplace discrimination, harassment, and constructive discharge. *Id.* ¶ 357.

## II.   PROCEDURAL HISTORY[2]

Ramirez filed the instant Complaint on August 7, 2020. The Complaint attached the Document and quoted extensively from it. In an August 27, 2020 letter, Defendants moved to seal the Document and to redact Complaint paragraphs 70, 75, 124, 134, 135, 137, 182, 195 n.10, 232,

---

[2] Defendants are separately moving to file a motion to dismiss for violation of Rule 8 of the Federal Rules of Civil Procedure or, in the alternative, motion to strike paragraphs of the Complaint pursuant to Rule 12(f) of the Federal Rule of Civil Procedure. Doc. 18.

4

270, 271, 275, 276, 282, and 284.  Doc. 6 at 1.  Ramirez opposed sealing in a letter filed on September 1, 2020.  *See generally* Resp. In Opp., Doc. 16.  In a September 9, 2020 letter, the parties agreed to redact additional sections of the Document, including references to Temin's husband and her medical team.  Doc. 25 at 3–4.  However, Ramirez opposes any redactions to the Complaint itself and disagrees with several other redactions proposed by Defendants.  *Id.* at 4.

In the instant motion, Defendants seek to redact sections of the Document and related paragraphs in the Complaint.  Doc. 6.  Specifically, Defendants seek to seal the following sections: (1) Temin's Board Membership, (2) Phone Etiquette Procedures, (3) Recording Call Procedures, (4) Client Hours, (5) Administrative Procedures – NYC Office, (6) ACT! References, (7) Salons, (8) References to Jimmy, Temin's personal driver, (9) Hair Appointments, (10) General Office Procedures, (11) Transcriptions, and (12) Digital Procedures (Website and Social Media).  *Id.*

### III.  LEGAL STANDARD

#### a.  Motion to Seal

"Judicial documents are subject at common law to a potent and fundamental presumptive right of public access that predates even the U.S Constitution."  *Mirlis v. Greer*, 952 F.3d 51, 58 (2d Cir. 2020); *see also Collado v. City of New* York, 193 F. Supp. 3d 286, 288 (S.D.N.Y. 2016).  However, "[a]lthough the public's right is strong, it is 'not absolute.'"  *Mirlis*, 952 F.3d at 59 (citing *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978)).

Courts engage in a three-step inquiry to determine whether the presumptive right to public access attaches to a particular document.  *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119–20 (2d Cir. 2006).  First, a court will determine whether the document is a "judicial document."  *Id.* at 119.  "A judicial document is one that has been placed before the court by the parties and that is 'relevant to the performance of the judicial function and useful in the judicial

5

process.'" *Mirlis*, 952 F.3d at 59 (quoting *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995)).  Second, the court must "determine the weight of the presumption of access" to the particular document.  *United States v. Erie Cty.*, 763 F.3d 235, 239 (2d Cir. 2014).  Generally, the presumptive right of access is given "strong weight."  *Mirlis*, 952 F.3d at 59; *see also United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995) ("[T]he weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts.").  Third, the court will balance the weight accorded to the presumption of access against "all of the factors that legitimately counsel against disclosure of the judicial document."  *Mirlis*, 952 F.3d at 59 (citing *Amodeo*, 71 F.3d at 1050).  "Countervailing factors" the court may consider include "(i) the danger of impairing law enforcement or judicial efficiency and (ii) the privacy interests of those resisting disclosure."  *Amodeo*, 71 F.3d at 1050; *see also Lugosch*, 435 F.3d at 120 (quoting *In re N.Y. Times Co.*, 828 F.2d 110, 116 (2d Cir. 1987)) ("Documents may be sealed if specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest.").

Regarding the third inquiry, courts in this Circuit have determined that the presumption of access may be outweighed when there are considerations of the need to conceal confidential business information that could harm a defendant's competitive position or reveal a trade secret.  *Encyclopedia Brown Prods. Ltd. v. Home Box Office, Inc.*, 26 F. Supp. 2d 606, 612–13 (S.D.N.Y. Oct. 15, 1998); *see also S.E.C. v. TheStreet.com*, 273 F.3d 222, 231 n.10 (2d Cir. 2001).  "A trade secret is 'any formula, pattern, device[,] or compilation of information which is used in one's business, and which gives [her] an opportunity to obtain an advantage over competitors who do not know or use it.'"  *Next Commc'ns Inc. v. Viber Media Inc.*, 758 F. App'x 46, 48 (2d Cir. 2018)

6

(quoting *Ashland Mgmt. Inc. v. Janien*, 624 N.E.2d 1007, 1013 (N.Y. 1993)); *see also Gelb v. Am. Tel. & Tel. Co.*, 813 F. Supp. 1022, 1035 (S.D.N.Y. 1993).  To determine whether documents contain a trade secret, courts will consider the following:

> (1) the extent to which the information is known outside of [the] business; (2) the extent to which it is known by employees and others involved in [the] business; (3) the extent of measures taken by [the business] to guard the secrecy of the information; (4) the value of the information to [the business] and [its] competitors; (5) the amount of effort or money expended by [the business] in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

*In re Parmalat Sec. Litig.*, 258 F.R.D. 236, 245 (S.D.N.Y. 2009).  These six factors aid the Court in considering whether the documents in question contain trade secrets or contain general knowledge in the trade or business.  *Sit-Up Ltd. v. IAC/InterActiveCorp.,* No. 05 Civ. 9292 (DLC), 2008 WL 463884, at *12 (S.D.N.Y. Feb. 20, 2008); *see also Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 475 (1974).  Further, "matters of . . . general knowledge in an industry cannot be appropriated by one as [her] secret."  *Sit-Up Ltd.*, 2008 WL 463884, at *12 (internal quotations omitted).

When a document is protected by a non-disclosure agreement, it will serve as an additional, although not dispositive, factor in determining whether the document contains confidential information or a trade secret and therefore should be sealed.  *See Mirlis*, 952 F.3d at 58; *see also Sit-Up Ltd.*, 2008 WL 463884, at *12 (holding that although a non-disclosure agreement had been breached when defendant revealed certain of plaintiff's information, a motion to seal still required that plaintiff provide additional considerations as to why the information contained trade secrets); *Kyocera Wireless Corp. v. SPH Am., LLC*, No. 09 Civ. 0299 (RBB), 2009 WL 10672086, at *1 (S.D. Cal. 2009) (holding that a compelling reason must also be alleged to seal a complaint, despite an NDA being present).

7

### b. Motion to Strike

"The court may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).  In general, "motions to strike are disfavored." *Ambac Assur. Corp. v. EMC Mortg. Corp.*, No. 08 Civ. 9464 (RMB) (MHD), 2009 WL 734073, at *1 (S.D.N.Y. Mar. 16, 2009) (quoting *Roe v. City of N.Y.*, 151 F. Supp. 2d 495, 510 (S.D.N.Y. 2001)).  The Court will "deem the non-moving party's well-pleaded facts to be admitted, draw all reasonable inferences in the pleader's favor, and resolve all doubts in favor of denying the motion to strike." *Diesel Props S.r.L. v. Greystone Bus. Credit II LLC,* No. 07 Civ. 9580, 2008 WL 4833001, at *4 (S.D.N.Y. Nov. 5, 2008); *see also Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976).  To prevail on a motion to strike, "a party must demonstrate that (1) no evidence in support of the allegations would be admissible; (2) that the allegations have no bearing on the issues in the case; and (3) that to permit the allegations to stand would result in prejudice to the movant." *Nungesser v. Columbia Univ.*, No. 15 Civ. 3216 (GHW), 2017 WL 1102661, at *1 (S.D.N.Y. Mar. 23, 2017).  "Federal courts have discretion in deciding whether to grant motions to strike." *Allocco v. Dow Jones & Co.*, No. 02 Civ. 1029 (LMM), 2002 WL 1484400, at *1 (S.D.N.Y. July 10, 2002).

### IV.   MOTION TO SEAL

There is no question that the Complaint and the attached Document are judicial documents. *Bernstein v. Bernstein Litowitz Berger & Grossmann, LLP*, 814 F.3d 132, 139 (2d Cir. 2016).  And as judicial documents, there is a strong presumption that they should remain accessible to the public.[3]  *See Haider v. Geller & Co.*, 457 F. Supp. 2d 424, 427 (S.D.N.Y. 2020) (citing *Bernstein*,

---

[3] Ramirez states that filing a full and detailed complaint was necessary because, if she did not, Temin would attack her allegations more viciously.  Doc. 26 at 2.  However, Ramirez's motive in including the Document is irrelevant for the purpose of determining whether documents should be sealed.  *See Amodeo,* 71 F.3d at 1050 ("[W]e believe motive

814 F.3d at 142); *Coventry Cap. US LLC v. EEA Life Settlements, Inc.*, No. 17 Civ. 7417 (VM) (HBP), 2017 WL 5125544, at *2 (S.D.N.Y. Nov. 2, 2017). Defendants do not contest either of these conclusions. Thus, the only dispute between the parties involves the third inquiry—namely, whether there are countervailing factors that outweigh this strong presumption of disclosure of the Document and the related portions of the Complaint. *Lugosch*, 435 F.3d at 124. Under that inquiry, the Court must balance the weight accorded with the presumption of access against "all of the factors that counsel against disclosure of the judicial document." *Mirlis*, 952 F.3d at 59.

Defendants assert that the Document and the paragraphs of the Complaint referencing the Document "contain sensitive [personal and] business information and trade secrets." Doc. 6 at 1. Defendants further argue it contains sensitive business information because it comprises an office procedural manual that their employees use to ensure proper procedures are followed when responding to current and potential clients, the media, colleagues, and others. *Id.* at 2. Additionally, Defendants note that every page of the Document has "Temin and Company" on the header, suggesting the document contains sensitive information regarding the Firm. Doc. 1–2 at 6. Furthermore, Defendants argue that the Document was protected by an NDA that Ramirez breached by submitting it with her complaint. Doc. 6. at 2.

In response, Ramirez argues that the portions of the Document as submitted with the Complaint do not include sensitive information or trade secrets and that she has redacted the confidential information. For example, she has redacted some client information, personal information, and passwords. Doc. 16 at 3. Ramirez argues that the Document contains only procedural information that any housekeeper or personal assistant would know. *Id.* at 4–5.

---

generally to be irrelevant to defining the weight accorded to the presumption of access."); *see also Lugosch*, 435 F.3d at 123 (holding that motive has no effect on the consideration of the weight of the presumption).

9

Ramirez submits that the Document was not safeguarded by the Firm to preserve its secrecy because all Firm employees used their personal phones and computers from home and upon Ramirez leaving the Firm, she was not asked to delete the Document. *Id.* at 4. Further, Ramirez argues primarily that Defendants failed to attach the NDA they are "referencing, describe its full terms and context, and explain it." *Id.* at 11. Ramirez argues that because of the strong presumption in favor of evidence being public in judicial proceedings, it is unclear whether the NDA would be enforceable in any event because parties cannot "contract around the First Amendment openness of our courts." *Id.* (internal quotations omitted).

For purposes of this inquiry, the Court divides the content of the Document into two categories: personal information and business information. The Document has several sections that contain or implicate Temin's purely personal information. Doc. 1–2 at 9, 57, 79, 85, 98. For example, the Document and the excerpts in the Complaint describe procedures relating to the boards on which she sits, how Temin prefers her coffee to be prepared, her beauty routine, and the way she likes her personal office to be maintained. *See id.* The Document also provides information on several outside vendors and non-party employees Temin prefers to utilize in her private life. *Id.*

Although the Court has recognized that sensitive personal information may constitute a "privacy interest" which supports the sealing of documents, it has only done so in instances where there are concerns relating to "financial records of a wholly owned business, family affairs, illnesses, and embarrassing conduct." *Amodeo*, 71 F.3d at 1050. *Mark v. Gawker Media LLC*, is instructive. No. 13 Civ. 4347 (AJN), 2015 WL 7288641, at *1 (S.D.N.Y. Nov. 16, 2015). In *Mark*, the defendant moved to redact portions of judicial documents relating to personal information such as email addresses, telephone numbers, and bank account information. *Id.* at *1.

10

The court granted the motion, holding that the privacy interests in the personal information outweighed the public's interest in access to it. *Id.* at *2.

Here, by contrast, that information that Defendants move to seal contains mere instructions on where Temin prefers her beauty appointments to be made, and Temin's board positions, which is already known to the public and published on the Firm's website. Doc. 25 at 4–6. This information does not involve personal contact information[4] or private bank account information. *See Mark,* 2015 WL 7288641, at *1; *Amodeo*, 71 F.3d at 1050. Further, the fact that Temin's personal driver's name is included in the Document reveals little, if any, information about his personal affairs. Doc. 1–2; *compare New York Times Co.*, 828 F.2d at 114–16 (holding that privacy concerns of non-parties weigh heavily on the determination to seal documents containing Title III materials).

The Court has also often declined to seal personal information when it relates to allegations made in the complaint and filings and "necessary to or helpful in resolving a motion." *Giuffre v. Maxwell*, 325 F. Supp. 3d 428, 442 (S.D.N.Y. 2018); *see also Brown v. Maxwell*, 929 F.3d 41, 50 (2d Cir. 2019) (holding that filings related to evidentiary and discovery matters have a strong presumption of public access). The personal information disclosed in the Complaint and Document is relevant to Ramirez's allegations that she was selected to perform menial and personal tasks for Temin because of the fact that she is a Black woman. Doc. 1 ¶¶ 142, 84.

Finally, although Defendants have presented an NDA that purports to protect the personal information contained in the Document, the existence of an NDA is not dispositive; Defendants must provide additional evidence that suggests the information is private to overcome the

---

[4] Ramirez has already redacted sensitive information containing email addresses and telephone numbers. Doc. 16 at 3.

11

presumption of access, and they have not done so here.  *See, e.g.*, *Aioi Nissay Dowa Ins. Co. Ltd. v. ProSight Specialty Mgmt. Co., Inc.*, No. 12 Civ. 3274 (JPO), 2012 WL 3583176, at *1 (S.D.N.Y. Aug. 21, 2012) (quoting *Alexandria Real Estate Equities, Inc. v. Fair*, No. 11 Civ. 3694 (LTS), 2011 WL 6015646, at *3 (S.D.N.Y. Nov. 30, 2011) ("[T]he mere existence of a confidentiality agreement covering judicial documents is insufficient to overcome the First Amendment presumption of access."); *compare Intertek Testing Servs., N.A., Inc. v. Pennisi*, 443 F. Supp. 3d 303, 341 & n.19 (E.D.N.Y. 2020) (sealing personal, confidential information when plaintiff submitted evidence that, in addition to a confidentiality agreement, evidenced that the information was confidential and private).  Additionally, although the NDA contains a clause that requires the "Surrender of Materials," it only requires those to be surrendered "which relate in any way to the business, products, practices or techniques of the Company or contain Confidential Information."  *See generally* Temin & Co.*,* NDA.  Sections of the Document regarding Temin's personal information is not business related, and is not considered confidential under Second Circuit authority.  Accordingly, the personal information that Defendants seek to seal does not outweigh the strong presumption of access afforded to the Complaint and the Document.

The Document also has several sections that include the Firm's business information.  Doc. 1–2 at 9, 22, 30, 46, 48, 79, 85, 92, 128.  Specifically, the categories of business information include: (1) business processes, (2) financial operations, (3) office procedures, (4) operating procedures, (5) client operating procedures, and (6) IT information.  Doc. 1–2 at 22, 30–31, 40–47, 48–56, 64–80, 81–84, 85–110.  The Court has established that business information constitutes confidential information or trade secrets when it is "sufficiently valuable and secret to afford an actual or potential economic advantage over others." *In re Parmalat Sec. Litig.*, 258 F.R.D. at 245; *see also Archbrook Laguna LLC*, 2008 WL 2987164, at *3.

The business information that is outlined in the Document does not, on its own, constitute confidential trade secrets sufficient to overcome the presumption of access.  *See Bernstein*, 814 F.3d at 142; *see also Caudill Seed and Warehouse Co. Inc. v. Jarrow Formulas, Inc.*, No. 13 Civ. 082 (CRS), 2020 WL 3065626, at *15 (W.D. Ky. Jun. 9, 2020) (noting that similar information appears only to be "mere skillful variations of general processes known throughout the [consulting industry]").  Yet, when viewed in conjunction with the NDA and confidentially features built into the Document itself, it is sufficiently valuable to overcome the presumption.  *See Mirlis*, 952 F.3d at 59 (finding that the court will consider all factors weighing against the presumption of access); *see also Sit-Up Ltd.*, 2008 WL 463884, at *10; *Next Commc'ns Inc.*, 758 F. App'x at 48.  In the Document, Temin outlines business procedures and know-how, such as the exact server location to record client billable hours,[5] client meeting preparation techniques, client phone calls transcription techniques, and website and social media account posting techniques.  Doc. 1–2 at 22, 46, 48, 92, 128; *In re Parmalat Sec. Litig.*, 258 F.R.D. at 245.

The NDA contains two clauses that are directly applicable to the business information contained in the Document:  (1) "Confidential Information" and (2) "Surrender of Materials."  Doc. 32–1 at 3.  The "Confidential Information" clause specifically prohibits the disclosure of any "techniques, know-how, . . . , processes, trade secrets, . . . , sales and customer information, customer, prospect or mailing lists, business plans, marketing plans and strategies, and business and financial information relating to the business."  *Id.* at 2.  As established above, the Document contains business information and business processes that govern the operations of the Firm which would be covered by the "Confidential Information" clause of the NDA.  *See generally id.*  Second,

---

[5] The server location for administration of client billable hours appears to have been hyperlinked.  It is believed that the hyperlink would bring employees directly to the appropriate Firm business file.  The hyperlink has been removed before filing of the Document.  Doc 1–2 at 46.

13

as discussed above, the "Surrender of Materials" clause requires information to be surrendered only if it contains "business, products, practices or techniques of the Company." *Id.* at 3. The Document clearly contains business practices and techniques, and thus, should have been surrendered to the Firm at the termination of Ramirez's employment. *See generally* Doc. 1–2.

Finally, the Document notified the Firm's employees that the Document was confidential.[6] For example, the Firm labeled every page header with "Temin and Company" and required Ramirez to sign an NDA.[7] Doc. 1–2 at 6; Doc. 6 at 2; *In re Parmalat Sec. Litig.*, 258 F.R.D. at 245. Defendants clearly spent considerable time and effort in creating the Document, as it is 143-pages long and provides considerable detail on how employees are expected to carry out their tasks. Doc 1–2. If another company acquired the Document, that company could very easily emulate the procedures within it. *In re Parmalat Sec. Litig.*, 258 F.R.D. at 245; *see, e.g., Archbrook Laguna LLC,* 2008 WL 2987164, at *3 (finding that the Hewlett Packard employee information and investigative procedures manual could evoke serious injury to the firm if obtained by a competitor).

Ramirez counters that, because much of the Firm's business information is procedural, that information should remain accessible to the public. However, that argument has no merit, as courts have regularly sealed procedural documents. *See, e.g*, *Archbrook Laguna LLC*, 2008 WL 2987164, at *1. Trade secrets are important assets to a firm, and their disclosure places the firm at serious risk of injury. *Amodeo*, 71 F.3d at 1049; *In re N.Y. Times Co.*, 577 F.3d 401, 410 n.4

---

[6] Defendants also argue that the Document was stolen by Ramirez. Doc. 6 at 2. Defendants correctly acknowledge that they may seek relief for the alleged stolen document at a later time. *Id.*

[7] An NDA will serve as strong, additional evidence to seal pieces of the complaint that contain business information that may harm the Defendants. *See Sit-Up Ltd.*, 2008 WL 463884, at *12.

(2d Cir. 2009) ("When litigation requires disclosure of trade secrets, the court may disclose certain materials only to the attorneys involved.").

As such, public access to this information could alter the Firm's competitive position in the consulting market. *See, e.g., Gelb*, 813 F. Supp. at 1035 (holding that compilation of calling cards is information that is sufficiently valuable and could alter a firm's competitive position). Defendants have demonstrated that the business information in the Document constitutes confidential trade secrets, which if exposed any longer could cause injury to the Firm. *See Sit-Up Ltd.,* 2008 WL 463884, at *3. As a result, the business information will be sealed. *See* Doc. 1–2 at 9, 22, 30, 46, 48, 79, 85, 92, 128.

## V. MOTION TO STRIKE

Defendants argue that Ramirez's complaint is "prolix, replete with alleged evidentiary material, and redundant." Doc. 18 at 2. They also argue that the Complaint is too complex and excessive. *Id.* Although the Complaint, which spans 77 pages and 481 paragraphs, is perhaps more detailed than it strictly speaking needs to be, the Court does not conclude that Defendants will be prejudiced by denial of the motion; this Court will lean toward the general disfavor of motions to strike. *See, e.g.*, *Nungesser*, 2017 WL 1102661, at * 2 (finding that Defendant was not prejudiced by a 271 paragraph and 100-page complaint). Therefore, Defendants' motion to strike Ramirez's Complaint and supporting documents is denied.

## VI. CONCLUSION

For the foregoing reasons, Defendants' motion to seal is DENIED IN PART and GRANTED IN PART. Defendants' motion to strike is DENIED. The Clerk of the Court is respectfully directed to seal the Complaint and the Document, such that access is restricted to the Court and the attorneys of record listed on ECF. Docs. 1 and 1–2. By November 23, 2020, Plaintiff

is directed to file a copy of the Complaint with the following paragraphs redacted: 124, 134–35, 137, 182, 195 n.10, 232, 270–71, 276.  Also by that date, Plaintiff is directed to file a copy of the Document with the following portions redacted:  (1) "Phone Answering Etiquette" (Page 22), (2) "Recording A Call" (Pages 30–31), (3) "Client Hours" (Pages 46–47), (4) "Administrative Procedures – NYC Office" (Pages 48–56), (5) "ACT! Scheduling" (Pages 58–59), (6) "General Office Procedures" (Pages 85–87), (7) "Transcriptions" (Pages 92–98), and (8) "Digital Procedures (Website and Social Media)" (Pages 128–32).  The Clerk of the Court is respectfully directed to terminate the motion, Doc. 6.

It is SO ORDERED.

Dated:   November 18, 2020
         New York, New York

_____
Edgardo Ramos, U.S.D.J.